James Scott **KREAGER,** Plaintiff-Appellant,

v.

**GENERAL ELECTRIC COMPANY** et al., Defendants-Appellees.

James Scott **KREAGER,** Plaintiff-Appellant,

v.

**GENERAL ELECTRIC COMPANY** et al., Defendants-Appellees.

Nos. 124, 637, Dockets 73–1987, 73–2577.

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1974.

Decided May 13, 1974.

Certiorari Denied Oct. 15, 1974. See 95 S.Ct. 111.

James Scott Kreager, New York City, plaintiff-appellant pro se in both appeals.

Phil E. Gilbert, Jr., New York City (Elihu Inselbuch, Robert G. Bernstein and Gilbert, Segall & Young, New York City, on the brief), for General Electric Co., Fred J. Borch, Herman L. Weiss, John B. McKitterick, John P. Donohue, David W. Burke, Donald D. Scarff, Thomas Castle and Robert J. Diefenthaler (defendants-appellees in No. 73–1987) and for General Electric Co., Herman L. Weiss, David W. Burke, John B. McKitterick, John P. Donohue and Luther Earl Birdzell, Jr., (defendants-appellees in No. 73–2577).

Ernest S. Meyers, New York City (Jules E. Yarnell and LaPorte & Meyers, New York City, on the brief), for International Telephone and Telegraph Corp., Harold S. Geneen, Raymond L. Brittenham, Henry E. Bowes, Robert J. Theis, James Paul Jannuzzo, James A. O'Connell, John T. Thompson, Cornell

Remsen and Edward J. Fitzpatrick (defendants-appellees in No. 73–1987).

Peter J. Gartland, New York City (Peter A. Dankin and Wender, Murase & White, New York City, on the brief), for Toshiba America, Inc. (defendant-appellee in Nos. 73–1987 and 73–2577) and for Toyko Shibaura Electric Co., Ltd. (defendant-appellee in No. 73–2577).

Before DANAHER\*, LUMBARD and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

These consolidated appeals bring up for review the dismissal of private antitrust litigation that this pro se appellant has had pending in one form or another in the district court for more than six years.

In Kreager (Mercu-Ray Industries, Inc.) v. General Electric Company, et al. (No. 73–1987), Kreager appeals pro se [1] from a judgment entered in the Southern District of New York after a jury trial before Edward Weinfeld, *District Judge*. At the close of all of the evidence, the court dismissed the claims under Section 2 of the Sherman Act, all pendent claims based upon fraud and deceit (these claims not having been pleaded but having been considered by the court to have been tried), and all claims against certain of the individual defendants. The court submitted the conspiracy claims under Section 1 of the Sherman Act to the jury which returned a verdict in favor of all defendants.[2]

---

\* Senior Judge of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. On October 25, 1973, we granted the motion of counsel for Mercu-Ray to be relieved as such, and we reaffirmed our order of July 17, 1973 denying Kreager leave to appeal pro se on behalf of the corporation. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2 Cir. 1967).

On November 1, 1973, after being informed of an alleged assignment of Mercu-Ray's claims to Kreager, we granted leave to amend the caption of the appeal in No. 73–1987 to read James Scott Kreager v. General Electric Company, et al.

2. The jury returned a special verdict on the Section 1 conspiracy issue by answering in the negative the following written question submitted pursuant to Fed.R.Civ.P. 49(a) with respect to the remaining defendants: "Do you find that plaintiff has established by a preponderance of the evidence that during the time period in issue (July 28, 1967 to on or about September 7, 1967) any of the following defendants entered into a conspiracy and combination to prevent production and distribution of plaintiff's illuminating sign, resulting in an unreasonable restraint of trade: [remaining defendants named] ?"

Judgment dismissing this action was entered June 27, 1973.

On the same day, June 27, Kreager commenced a second action but asserted essentially the identical claims as those in the action dismissed earlier that day. In due course an order was entered on September 25, 1973 in this action in the Southern District of New York, Kevin T. Duffy, *District Judge,* dismissing the complaint on the ground of *res judicata,* the second action being barred by the judgment dismissing the first action. It is from the order dismissing this second action that Kreager appeals pro se in Kreager v. General Electric Company, et al. (No. 73–2577).

Since we find no merit in either appeal, we affirm.

### I.

The essential facts underlying both appeals may be briefly summarized.

Kreager is the president and sole stockholder of Mercu-Ray Industries, Inc., an Ohio corporation. Mercu-Ray transacts no business. Its only asset is a patent issued in 1957 relating to an advertising sign.[3] The sign features a glass tubular bulb which requires no direct electrical connections but is activated by energy transmitted over high frequency radio waves. Despite claims that commercial acceptance of the sign would revolutionize the lighting industry, Kreager has been wholly unsuccessful in his countless attempts to interest others in marketing the device. The patent has never been licensed. The sign has never been manufactured or sold commercially.[4]

During the summer of 1967, Kreager approached representatives of the corporate defendants, General Electric Company (GE) and International Telephone and Telegraph Corporation (ITT). He sought their help in the development and production of his sign. Both agreed to evaluate its commercial possibilities. Kreager made simultaneous importunate demands upon both for an immediate response. Eventually they both advised Kreager on September 7, 1967 that they were not interested in his proposals. One of the reasons given by GE was the prohibitive cost of the necessary hand blown glass tubing. Unconvinced, Kreager contacted representatives of Toshiba America, Inc. (Toshiba)[5] to inquire whether its Japanese affiliates were equipped to manufacture the tubing. On September 11, 1967, he received a negative response.

Predicated on these three rejections, two on the same day, Kreager commenced the first of his private antitrust actions in the Southern District of New York on March 5, 1968. He sued in the name of his wholly owned corporation, Mercu-Ray. He alleged that GE, ITT, Toshiba and certain officers and employees of GE and ITT had conspired during the period July 28, 1967 to September 1967 to prevent Mercu-Ray's commercial exploitation of its product and to monopolize the development, manufacture and sale of electronic advertising signs, all in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1970). After the pleadings were closed and extensive discovery had taken place, the action was tried before Judge Weinfeld and a jury in June 1973 with the result stated above.

The complaint in Kreager's second action, commenced simultaneously with the

---

3. The patent was assigned to the corporation for nominal consideration in 1957. Neither Kreager nor any one associated with him invented the device. It is described as a long-lasting, cold-burning, neon-type, point-of-purchase advertising sign.

4. The reasons for Kreager's marketing difficulties are not hard to fathom. The concept of radio activated gas filled tubular bulbs is not new. No similar product has ever

proved commercially successful. Potential FCC regulatory problems arising from the device's interference with wireless communication transmissions, as well as high production costs, make other point-of-purchase advertising more advantageous competitively.

5. Toshiba is a subsidiary of Tokyo Shibaura Electric Co., Ltd. It is partially owned by GE.

dismissal of the first, virtually tracked the complaint in the prior action, except that it alleged that the defendants continued their conspiracy against Mercu-Ray by defending the first action. Kreager substituted himself for Mercu-Ray as plaintiff in the second action; he dropped ITT, its officers and employees, and several of the GE officers and employees; and he added Luther E. Birdzell, Jr., a GE employee, and Tokyo Shibaura Electric Co., Ltd. (Toshiba's Japanese parent) as parties defendant. Upon motions by defendants to dismiss on various grounds, Judge Duffy, by a memorandum and order dated September 25, 1973, dismissed the action, stating that "[t]he prior action disposed of all of the claims asserted here. There must be a termination of the litigation."

## II.

■ In the first action (No. 73–1987), we hold that Judge Weinfeld correctly dismissed at the close of all of the evidence the claims under Section 2 of the Sherman Act. Section 2 prohibits the monopolization of, or any attempt or conspiracy to monopolize, "any part of the trade or commerce among the several States." 15 U.S.C. § 2 (1970). It is axiomatic that "[i]n order to fall within § 2, the monopolist must have both the power to monopolize, and the intent to monopolize" the relevant market. United States v. Aluminum Co. of America, 148 F.2d 416, 432 (2 Cir. 1945). Mercu-Ray failed to offer any proof defining the relevant market. It failed to prove that any of the corporate defendants had the requisite monopoly power or any intent to monopolize, coupled with a "dangerous probability" of success. Lorain Journal Co. v. United States, 342 U.S. 143, 153 (1951); Swift & Co. v. United States, 196 U.S. 375, 396 (1905). Since there was a total failure of proof on the Section 2 claims, they were properly dismissed without submission to the jury. McElhenney Co. v.

Western Auto Supply Co., 269 F.2d 332, 339 (4 Cir. 1959); Mackey v. Sears Roebuck & Co., 237 F.2d 869, 873 (7 Cir. 1956), cert. dismissed, 355 U.S. 865 (1957).

■ We also hold that the court correctly dismissed at the close of all of the evidence pendent fraud and deceit claims, since there was not a shred of evidence to establish the requisite elements of such a cause of action. Channel Master Corp. v. Aluminum Limited Sales, Inc., 4 N.Y.2d 403, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958).

■ With respect to the conspiracy claims under Section 1 of the Sherman Act which were submitted to the jury, the only evidence offered by Mercu-Ray in support of such claims was the coincidence of the dates of defendants' rejection of Kreager's proposals.[6] Such parallel business behavior, without more, does not establish an illegal agreement in violation of the Sherman Act. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 286–88 (1968); Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 541 (1954). The jury verdict in favor of defendants correctly reflected the absence of credible evidence of a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act.

## III.

■ In the second action (No. 73–2577), we hold that Judge Duffy correctly dismissed the complaint on the ground of *res judicata*, since the second action was barred by the judgment dismissing the first. In short, the court correctly concluded that Kreager, as the sole shareholder of Mercu-Ray, was bound by the dismissal of the first action brought in the name of his corporation.

■ In Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944, 955 (2 Cir.), cert. denied, 377 U.S. 934 (1964), we held [7] that three fac-

---

6. Kreager's further reliance in support of this claim on the fact that Toshiba is partially owned by GE is frivolous.

7. Following the formulation stated by Justice Traynor in Bernhard v. Bank of America, 19 Cal.2d 807, 811–13, 122 P.2d 892, 894–95 (1942).

tors are required to support a defense of *res judicata*: (1) there must have been a "final judgment on the merits" in the prior action; (2) the identical issues sought to be raised in the second action must have been decided in the prior action; and (3) the party *against* whom the defense is asserted must have been a party or in privity with a party to the prior action.

In the instant case, clearly the first two factors stated above are present: there was a final judgment on the merits in the Mercu-Ray case, and Kreager sought in the second action to relitigate the identical issues that had been decided in the prior action. Aside from the claims of fraud and deceit in the first action which were not pleaded but were considered by Judge Weinfeld, the complaint in the second action is essentially a carbon copy of the first. Both allege substantially the same conspiracy to prevent the development and to monopolize the development, manufacture and marketing of the Mercu-Ray product. Virtually the same wrongful conduct and substantially the same overt acts are alleged. Both conspiracies are said to have begun on the same day, June 20, 1967. The only significant differences between the two complaints are that Kreager has substituted himself for Mercu-Ray as plaintiff, has increased the ad damnum from $9.6 million to $750 million and has juggled the defendants.

■ As for the third requirement stated in *Zdanok* to support a defense of *res judicata*, we hold that the fact that Mercu-Ray rather than Kreager was the plaintiff in the first action is not fatal to the defense. It is well settled that a stockholder is not a person injured in his business or property within the meaning of the antitrust laws. Kreager lacked standing to bring a private antitrust action to recover damages for injuries allegedly sustained by his corporation. Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678, 679 (2 Cir. 1955), cert. denied, 350 U.S. 936 (1956); Westmoreland Asbestos Co., Inc. v. Johns-Manville Corp., 30 F.Supp. 389, 391 (S.D.N.Y.1939), aff'd on opinion below, 113 F.2d 114 (2 Cir. 1940). And, while not denominated a party, Kreager participated in and effectively controlled the first action. He was present in court throughout the trial, attended conferences in chambers and was the corporation's principal witness. He had an identity of interest [8] with Mercu-Ray and was bound by the judgment against it. Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 961 (5 Cir. 1968); 1B Moore, Federal Practice ¶ 0.411[10], at 1658 (2d ed. 1965).

We therefore hold that Judge Duffy properly sustained the defense of *res judicata* raised on the motions to dismiss by defendants who were parties to the prior action, i. e., GE, its officers and employees (with the exception of Birdzell), as well as Toshiba. And absent any requirement of mutuality, Zdanok v. Glidden Company, *supra*, 327 F.2d at 955; cf. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971), we hold that Kreager was estopped from relitigating the same issues against Tokyo Shibaura and Birdzell as well.

We have carefully considered all of appellant's claims of error on both appeals and find them without merit.

Affirmed.

---

8. In connection with Kreager's claim of separate identities, we note that he is the appellant before us from the judgments in both actions.